UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**PATRICK JAMES WERNER,**

                        Plaintiff,

   v.                                   **Case No. 15-cv-103-pp**

**AMY JO JONES,**
**BRIDGET BELLOWS,**
**DR. BECK,**
**DR. MICHAEL FINNEGAN, and**
**BROWN COUNTY SHERIFF'S DEPARTMENT,**

                        Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS (DKT. NO. 2), GRANTING PLAINTIFF'S MOTION TO WAIVE INITIAL PARTIAL FILING FEE (DKT. NO. 4), AND SCREENING PLAINTIFF'S COMPLAINT**

Patrick James Werner, a state prisoner, filed a *pro se* complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated at the Brown County Jail. This matter comes before the court on the plaintiff's motion for leave to proceed *in forma pauperis*, the plaintiff's motion to waive the initial partial filing fee, and for screening of the plaintiff's complaint.

**I.    MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS**

The Prison Litigation Reform Act applies to this action because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. That law allows a court to give an incarcerated plaintiff the ability to proceed with his lawsuit without pre-paying the civil case-filing fee, as long as he meets certain conditions. One of those conditions is a requirement that the plaintiff

1

pay an initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays the initial partial filing fee, the court may allow the plaintiff to pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

On January 28, 2015, the court issued an order requiring the plaintiff to pay an initial partial filing fee of $10.16. Dkt. No. 6. At that time, the plaintiff already had filed a motion to waive the initial partial filing fee. Dkt. No. 4. In the motion, the plaintiff details both his earnings and the many deductions that the prison takes from this prison trust account, leaving him without a remainder to pay his initial partial filing fee. "In no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has not assets and no means by which to pay the initial partial filing fee." 28 U.S.C. § 1915(b)(4). The court will grant the plaintiff's motion to waive the initial partial filing fee and grant the plaintiff's motion for leave to proceed without pre-paying the filing fee. The court will allow the plaintiff to pay the balance of the $350.00 filing fee over time from his prisoner account, as described at the end of this order.

## II. SCREENING OF THE PLAINTIFF'S COMPLAINT

### A. <u>Standard for Screening Complaints</u>

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss part or all of a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that

2

seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Denton v. Hernandez, 504 U.S. 25, 31 (1992); Neitzke v. Williams, 490 U.S. 319, 325 (1989); Hutchinson ex rel. Baker v. Spink, 126 F.3d 895, 900 (7th Cir. 1997). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." Lindell v. McCallum, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

To state a claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A plaintiff does not need to plead specific facts, and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint, however, that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

3

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, courts follow the principles set forth in Twombly. First, the court must "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. A plaintiff must support legal conclusions with factual allegations. Id. Second, if there are well-pleaded factual allegations, courts must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that the defendants: 1) deprived of a right secured by the Constitution or laws of the United States; and 2) acted under color of state law. Buchanan-Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Village of North Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

B.  Facts Alleged in the Complaint

The plaintiff's complaint details medical care he received while he was incarcerated at the Brown County Jail (Jail) in 2013. On September 8, 2013,

4

the plaintiff developed an ingrown toenail and submitted a health service request form (HSR). He received no response to that HSR. Nor did the plaintiff receive any response to the HSRs he submitted on September 15, 2013, September 22, 2013, September 29, 2013, and October 6, 2013. Dkt. No. 1 at 4.

Finally, on October 8, 2013, the plaintiff asked a Jail employee if he could ask about his toe during the medication pass. After seeing the plaintiff's toe, the employee said yes. During medication pass, the plaintiff showed his toe to defendant Nurse Amy Jo Jones. Jones said she would call the plaintiff down to the health services unit (HSU) to look at his toe. She asked the plaintiff if he had put in an HSR, and the plaintiff told Jones he had submitted five. Id.

The plaintiff saw defendant Dr. Beck on October 10, 2013. Dr. Beck ordered a prescription drug called Keflex for the infection, but this was not effective. Dr. Beck saw the plaintiff again on October 22, 2013, and ordered another antibiotic and Epsom salt soaks. However, the new medication was not ready for the plaintiff until October 28, 2013. Id. at 4-5.

On October 23, 2013, when he had not received his medication, the plaintiff filed a grievance, but he did not receive a response until December 5, 2013. Id. at 5.

During medication pass one day, Jones told the plaintiff to hold off seeing the doctor because Dr. Beck was leaving soon and a new doctor was starting in November. As a result, the plaintiff waited to see the new doctor.

5

The plaintiff saw defendant Dr. Michael Finnegan on November 14, 2013; defendant nurse Bridget Bellows assisted Dr. Finnegan. Id. at 5.

At the examination on November 14, 2013, the plaintiff observed a metal instrument on the counter with no protective covering. Dr. Finnegan picked up the instrument to pry the nail off the plaintiff's left big toe. Dr. Finnegan said, "already infected" and asked "if Werner felt this nail being pried up." Id. The plaintiff replied that it hurt. No anesthetic was used, and the plaintiff "had to grip the edges of the examining table to keep from screaming or lashing out from the pain." Id. Bellows did not stop Dr. Finnegan from doing the procedure without anesthesia. Dr. Finnegan said "most would swear, cry out or kick from the pain." Id. The plaintiff's toe started to bleed from the digging, and Dr. Finnegan told the plaintiff that he would put in a referral for podiatry. He made the referral the same day. Id.

Dr. Finnegan saw the plaintiff again on December 3, 2013, and Jones assisted the doctor that day. They told the plaintiff that they would remove a portion of the nail to help ease the pain. While the doctor and nurse were preparing to remove the plaintiff's toenail, Jones told Dr. Finnegan that the Novocain was over 30 days expired. Dr. Finnegan replied that "it was fine to use." Id. When Dr. Finnegan put the anesthetic in the plaintiff's toe, he was injecting it and rooting the needle into the toe. The plaintiff felt severe pain and told Dr. Finnegan, but the doctor kept doing it. Id. at 5-6.

Five minutes after the injection, Dr. Finnegan poked the top of the plaintiff's toe with a needle to see if he felt it. The plaintiff said that he felt it,

6

and Dr. Finnegan asked, "can't we just say you don't feel this?" Id. at 6. The plaintiff said no. Dr. Finnegan rubbed the anesthetic into the plaintiff's toe, and it was numb ten minutes later. Id. at 6.

Dr. Finnegan then removed most of the nail and told the plaintiff this was only a temporary fix. Jones bandaged the plaintiff's toe, and the plaintiff was told to notify staff if blood leaked through the bandage. Even before he left the HSU, the plaintiff was bleeding through the bandage so they added more. Id.

Later that night, the plaintiff told both security staff and Nurse Heather Rogers (who is not named as a defendant) that blood was coming through the bandage. The plaintiff was told that Rogers did not have time to deal with him. Jones called the plaintiff to the HSU the next day to clean and inspect the wound and change the bandages. The plaintiff asked her about the podiatry referral, and Jones told the plaintiff he was not a serious enough priority and could be treated at the Jail. The plaintiff also asked why Rogers said she had no time to deal with him, and Jones said they were short staffed. Id.

On December 5, 2013, the plaintiff appealed his earlier grievance and filed a new one about the undue delay in the grievance response. He also sent an inmate request with several questions about the company that operated the HSU and the doctors and nurses working there. The plaintiff received the name of the HSU company, and he was directed to pose his other questions to the Legal Department of Correctional Healthcare Companies, Inc. The plaintiff contacted the company, but he received no reply. Id.

7

The plaintiff submitted HSRs on December 20, 2013, and December 24, 2013, regarding issues with his toe. Jones responded to both on December 31, 2013. He was told "next available appointment with Doctor." Id. at 7.

During the month of January 2014, the rest of the plaintiff's nail was ripped off in three separate sections. He notified Jail staff, who called the HSU, but nothing was done. Id.

The plaintiff saw Dr. Finnegan and Jones again on February 4, 2014, and Dr. Finnegan ordered another podiatry referral. Jones told the plaintiff that the HSU had been directed to try another antibiotic and betadine soaks on his toe and then the referral would be allowed if there was no change in his condition. Id.

At the instruction of a corporal, the plaintiff filed a grievance on February 7, 2014, complaining that his medical needs were not being met. The plaintiff received a response that acknowledged that his grievances were not being answered in a timely manner. Id.

The plaintiff was transferred to Dodge Correctional Institution (Dodge) on March 24, 2014, and no notes of treatment regarding his toe were sent with him. On April 30, 2014, staff at Dodge looked at his toe, and another portion of the nail (roughly the size of a dime) was removed. A Dr. Murphy at Oshkosh Correctional Institution told the plaintiff on May 21, 2014, that "he would have to have the full nail removed, due to the error of Defendant Doctor Michael Finnegan." Id. HSU staff at the prison saw the plaintiff weekly due to the color

8

and size of the wound. When he filed his complaint, the plaintiff's toe was still tender and red, and he was still in pain. Id.

The plaintiff suggests that his claims arise from the Americans with Disabilities Act (ADA), the Fifth Amendment, and the Eighth Amendment. He seeks damages from each of the individual defendants for their personal actions. He also seeks damages from the Brown County Jail (named as the Brown County Sheriff's Department, County Jail Division) because it (1) utilizes the employees of Correctional Healthcare Companies, Inc., (2) does not force the HSU to following the Jail's grievance procedures; and (3) does not check the credentials of employees hired by Correctional Healthcare Companies, Inc.

C.  Legal Analysis of Alleged Facts

To state a claim for relief under the Eighth Amendment, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 105-06. First, the court must consider whether the plaintiff had a serious medical need. The Seventh Circuit held that "[a]n objectively serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Zentmyer v. Kendall Cnty., Ill., 220 F.3d 805, 810 (2000) (quoting Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir. 1997)).

The court notes that the Seventh Circuit has concluded that removal of a toenail without local anesthetic does not state an Eighth Amendment claim. Snipes v. DeTella, 95 F.3d 586, 591 (7th Cir. 1996) ("A doctor's decision not to

9

anesthetize a toe before removing a partially torn-off toenail – like the decision to remove a big splinter or stitch a cut without anesthetic – is not the type of barbaric treatment the Eighth Amendment was intended to prevent."). The allegations in the plaintiff's complaint, however, go beyond Dr. Finnegan's decision to remove the toenail with expired anesthetic or anesthetic that had not yet taken effect.

The plaintiff submitted five HSRs in a month, which were ignored until he talked to Jones during medication pass. Then, after the first antibiotic he was given was ineffective, it took six days for the plaintiff to receive the second prescribed medication. At some time after that, Jones convinced the plaintiff to put off his request to see the doctor until a new doctor started. The plaintiff never saw a podiatrist, despite two referrals. Instead, Dr. Finnegan removed the plaintiff's toenail, using expired anesthetic that was not fully effective when he began. Dr. Finnegan also made comments the plaintiff found inappropriate and continued working even after the plaintiff said he was in pain. The plaintiff received very little follow up treatment in January, February, and March 2014. Then he was transferred to another institution. The court concludes from these allegations that the plaintiff has stated Eighth Amendment medical care claims against Amy Jo Jones, Bridget Bellows, Dr. Beck, and Dr. Michael Finnegan.

The plaintiff may not proceed, however, on claims under the ADA. The ADA states that individuals with disabilities cannot be discriminated against. See U.S.C.A. § 12132 (2012). In Pa. Dep't. of Corr. v. Yeskey, the Supreme Court held that the ADA extends to prison inmates. 524 U.S. 206, 213 (1998).

10

To state a claim under the ADA, a plaintiff must allege that: 1) he is an individual with a disability; and 2) that he was discriminated against by a public entity. See § 12132. An individual has a disability when he has: (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(1)(A)-(C) (2009). Major life activities include major bodily functions. § 12102(2)(B). Under this standard, the plaintiff's ingrown toenail does not constitute a disability. Nor has he made allegations that he was discriminated against.

Nor may the plaintiff proceed on a claim against the Brown County Sheriff's Department, because it is not a governmental entity that can be sued under 42 U.S.C. §1983. "Sheriff's departments and police departments are not usually considered legal entities subject to suit, but 'capacity to sue or be sued shall be determined by the law of the state in which the district court is held.'" Dean v. Barber, 951 F.2d 1210, 1214 (11th Cir. 1992) (internal citations omitted). See also Fed. R. Civ. P. 17(b)(3). The Seventh Circuit Court of Appeals has held that a Wisconsin sheriff's department "is not a legal entity separable from the county government which it serves and is therefore, not subject to suit." Whiting v. Marathon Cnty. Sheriff's Dep't., 382 F.3d 700, 704 (7th Cir. 2004), citing Buchanan v. Kenosha, 57 F.Supp.2d 675, 678 (E.D. Wis. 1999).

A plaintiff may sue a government entity under §1983 ". . . when the government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the

11

injury . . . ." Monell v. City of New York Dep't of Social Serv's., 436 U.S. 658, 694 (1978). There must be a "direct causal link" between the alleged unconstitutional deprivation and the municipal policy or custom at issue. City of Canton v. Harris, 489 U.S. 378, 385 (1989). Even if the plaintiff had named Brown County as the defendant (versus the Sheriff's Department or the Jail), he has not pled a causal link between the way he was treated by the individual defendants and a municipal policy or custom.

Finally, the plaintiff may not proceed on any Fifth Amendment claims. The Fifth Amendment protects defendants from being prosecuted twice for the same offense, from being compelled to incriminate themselves, and from being deprived of their liberty without due process. None of the allegations in the plaintiff's complaint implicate the Fifth Amendment.

## III. CONCLUSION

The court **GRANTS** the plaintiff's motion for leave to proceed *in forma pauperis*. Dkt. No. 2. The court also **GRANTS** the plaintiff's motion to waive the initial partial filing fee. Dkt. No. 4. The court **ORDERS** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from plaintiff's prison trust account the $350.00 balance of the filing fee by collecting monthly payments from plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the clerk of the court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The Secretary of the Wisconsin Department of Corrections or his designee shall

12

clearly identify the payments by the case name and number assigned to this action.

The court **DISMISSES** the Brown County Sheriff's Department as a defendant.

The court **ORDERS** that the plaintiff may proceed on his Eighth Amendment "deliberate indifference" medical care claims against Amy Jo Jones, Bridget Bellows, Dr. Beck, and Dr. Michael Finnegan.

The court further **ORDERS** the United States Marshal to serve a copy of the complaint and this order upon the defendant pursuant to Federal Rule of Civil Procedure 4. The plaintiff is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. § 1921(a). The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2), (a)(3). Although Congress requires the court to order service by the U.S. Marshals Service precisely because *in forma pauperis* plaintiffs are indigent, it has not made any provision for these fees to be waived either by the court or by the U.S. Marshals Service.

The court **ORDERS** that the defendants who are served with the complaint shall file a responsive pleading to the complaint.

The court **ORDERS** that the plaintiff shall submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse

517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter. As each filing will be electronically scanned and entered on the docket upon receipt by the clerk, the plaintiff need not mail copies to the defendants. All defendants will be served electronically through the court's electronic case filing system. The plaintiff should also retain a personal copy of each document filed with the court.

The court further advises plaintiff that if he does not timely file documents, the court may dismiss his case for failure to prosecute.

In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

The court will send a copy of this order to the warden of the institution where the inmate is confined.

Dated at Milwaukee this 4th day of September, 2015.

BY THE COURT:

_____
HON. PAMELA PEPPER
United States District Judge