UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

PATRICK J. WERNER,

        Plaintiff,

   v.                                    Case No. 15-C-103

AMY JO JONES,
BRIGIT BELOW,
DR. BECK, and
THOMAS FINNEGAN, MD,

        Defendants.

## DECISION AND ORDER

Plaintiff Patrick Werner, currently a prisoner serving a state sentence at Oshkosh Correctional Institution, filed this *pro se* 42 U.S.C. § 1983 action against defendants Amy Jo Jones, Brigit Below, Dr. Beck, and Dr. Finnegan for violation of his constitutional rights while he was in custody at the Brown County Jail. Werner claims the defendants were deliberately indifferent to his serious medical needs when they failed to properly treat his ingrown toenail. Currently before the court are defendants' motion to dismiss Finnegan as a defendant and their motion for summary judgment. For the following reasons, the defendants' motions will be granted and the case will be dismissed.

## BACKGROUND

Werner claims Brown County Jail medical staff were deliberately indifferent in treating his ingrown toenail. He notes that he has experienced ingrown toenails since January 2007. Pl.'s Proposed Findings of Fact (PPFOF) ¶ 14, ECF No. 79. Werner was transferred to the Brown County Jail in February 2013. Shortly after his arrival, the jail physician prescribed three tablets of

Tylenol to take twice daily for pain. Defs.' Proposed Findings of Fact (DPFOF) ¶ 26, ECF No. 67. From February 16 though September 28, 2013, Werner submitted 64 inmate requests for medical care, but none of the requests sought care for his toe. *Id.* ¶ 27. Werner claims he submitted medical requests on September 8, 15, 22 and 29, 2013 that were not addressed by medical staff, though he does not indicate that these requests pertained to an ingrown toenail. PPFOF ¶ 13.

      The defendants contend Werner first submitted a health care request regarding pain in his left big toe on September 29, 2013. In that request, Werner noted he that he had experienced pain in his toe "for the past 2 days." DPFOF ¶ 28 (quoting ECF No. 70-2 at 68). Five days later, on October 4, 2013, Nurse Amy Jones examined Werner's toe. *Id.* ¶ 30. She noted in a medical progress note that Werner's left big toe was swollen and red with some drainage from the nail bed. Nurse Jones arranged for Dr. Beck to examine Werner's toe. *Id.* ¶ 32. That same day, a physician prescribed the antibiotic Keflex for Werner to use twice a day for ten days to ward off any potential infection. *Id.* ¶ 33. Dr. Beck examined the toe on October 8, 2013, observed that Werner had an ingrown toenail that was red with no drainage, and instructed Werner to continue using Keflex and soak his toe in Epsom salt bathes twice a day for seven days. *Id.* ¶¶ 35–36. Medical staff continued to monitor Werner's toe to determine whether the antibiotic and salt-soaks prevented infection and reduced pain. *Id.* ¶ 39. He was examined by the jail physician on October 17 and October 22, 2013. At the follow-up appointment on October 22, 2013, Werner complained that his toe was "worse." The physician noted that the toe was red and swollen, though it showed no sign of drainage, and prescribed Augmentin for Werner to use twice a day for ten days. *Id.* ¶ 40. Werner received the prescription on October 28, 2013.

Dr. Finnegan examined Werner's toe on November 14, 2013, with the assistance of Nurse Below. *Id.* ¶ 43. During the examination, Dr. Finnegan noted Werner complained of pain and drainage and determined Werner would need the infected portion of his left big toenail removed. He also mentioned that Werner could be referred to an outside podiatrist for the procedure. *Id.* ¶ 45. On November 23, 2013, Werner submitted a medical request inquiring as to the status of the podiatry referral. Nurse Jones responded to the inquiry within four days and informed him his appointment was under review. *Id.* ¶ 47. On November 27, 2013, jail medical staff provided Werner with additional Epsom salt to continue his salt-soaks. That same day, Werner submitted a medical request asking about the status of his medical appointment for his toe. Nurse Jones responded within three days, informing him that he will be seen by a jail doctor for the partial nail removal, rather than a podiatrist. *Id.* ¶ 49.

Dr. Finnegan performed the partial toenail removal, among other medical procedures, on December 3, 2013. *Id.* ¶ 50. Dr. Finnegan began the procedure by injecting Werner's toe with a Lidocaine numbing agent and rubbed the agent on his toe. He then removed the infected portion of Werner's "nail plate." *Id.* ¶ 52. Dr. Finnegan prescribed a 90-day supply of extra strength Tylenol for Werner to use for pain during his recovery. *Id.* ¶ 56.

Nurse Jones examined Werner's surgical wound, changed the dressing, and applied Bacitracin to his toe on December 4, 5, and 6, 2013. *Id.* ¶¶ 60–61. Werner submitted eight medical requests unrelated to his toe between December 5 and December 20, 2013. *Id.* ¶ 63. He then submitted requests on December 20, 22, and 24, 2013, noting some discoloration on his toenail as well as the skin on his toe and claiming his toe was sore and dry. *Id.* ¶ 64. A registered nurse examined Werner on December 27, 2013 and noted Werner's toe was "tan colored." *Id.* ¶ 66. Dr.

Finnegan advised that Werner should continue using the antibiotic and salt-soak as previously prescribed. *Id.* ¶ 67. Nurse Jones also responded to his requests on December 31, 2013 and informed him that he would be seen at the next available appointment. *Id.* ¶ 65.

Werner contends that in January 2014, his toenail began splitting. PPFOF ¶ 52. Dr. Finnegan and Nurse Jones examined Werner during a sick call on January 3, 2014 to evaluate his flu-like symptoms and dandruff concerns. Dr. Finnegan noted Werner's toe was sensitive and instructed Werner to continue the antibiotic and salt-soak regime. DPFOF ¶ 68. Werner submitted a medical request on January 25, 2014, describing redness and complaining that his nail was "coming apart." *Id.* ¶ 69. Dr. Finnegan and Nurse Jones examined Werner's toe on February 4, 2014. Dr. Finnegan noted the toe was clean and dry and did not have drainage but was slightly red. At this appointment, Dr. Finnegan suggested scheduling a podiatry appointment for Werner if his pain continued. *Id.* ¶ 70. Nurse Jones informed Werner that, in the meantime, he was to try another round of antibiotics with Betadine soaks. If this final round of treatment did not resolve his problems, the jail would order a podiatry referral. *Id.* ¶ 73.

Werner contends that on February 20, 2014, he told a guard that his toe was bleeding and that he was in pain. PPFOF ¶ 57. That same day, Nurse Below examined the toe, cleaned the wound, applied Bacitracin, and covered the toe with gauze and tape. Dr. Fatoki ordered the antibiotic Ciprofloxacin and provided a Batedine solution for Werner to use twice a day for seven days. DPFOF ¶¶ 74–75. He used the Batedine solution and medication from February 21 through February 28, 2014. *Id.* ¶ 76. Werner submitted a final medial request on March 3, seeking information about the podiatry referral and complained of continued discomfort. The medical staff continued to provide him extra-strength Tylenol throughout March, until he left the facility for

4

Dodge Correctional Institution on March 24, 2014. *Id.* ¶ 77. Werner received the same treatment for his toe at Dodge Correctional Institution and Oshkosh Correctional Institution until he ultimately underwent a full nail removal on June 5, 2014. *Id.* ¶¶ 95–96.

## ANALYSIS

**A. Motion to Dismiss**

The defendants filed a motion to dismiss on behalf of defendant Thomas Finnegan, M.D., who died on February 4, 2017, based on Werner's failure to file a motion for substitution in accordance with Rule 25 of the Federal Rules of Civil Procedure. Rule 25(a) addresses the substitution of a party upon death and provides:

> If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.

Fed. R. Civ. P. 25(a)(1).

On March 24, 2017, the defendants filed a Suggestion of Death, indicating that Dr. Finnegan died on February 4, 2017, along with a certificate of service which noted that the filing was mailed to Werner at his last known address at Oshkosh Correctional Institution. As a result of this filing, Werner was required to file a motion for substitution of party on or before June 22, 2017. To date, Werner has not filed a motion to substitute.

Werner asserts that he never received the Suggestion of Death from the defendants so he could not know that he was required to substitute a party. The docket indicates that Werner requested, and received from the Clerk, copies of the docket on April 5 and April 24, 2017, which indicated the Suggestion of Death was filed on March 24, 2017. Yet, Werner neither notified the

5

court nor the defendants that he did not receive this filing. In addition, there have be no issues with other deliveries in this case, and Werner has not claimed that he has not received any other filings. In short, Werner's alleged failure to receive the Suggestion of Death is not well-supported and does not demonstrate good cause for his failure to comply with Rule 25(a). Werner did not file a timely motion to substitute pursuant to Rule 25(a). Therefore, the defendants' motion to dismiss is granted and all claims against Dr. Finnegan are dismissed. As the following discussion reveals, however, even if a substitution of parties had been made, the result would be the same.

**B. Motion for Summary Judgment**

The defendants have also filed a motion for summary judgment to dismiss Werner's deliberate indifference claims in their entirety. Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of proving that summary judgment should be granted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 933, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

The Eighth Amendment prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. It imposes a duty on prison officials to take reasonable measures to guarantee an inmate's safety and to ensure that inmates receive adequate medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). A prison official's "deliberate indifference" to a prisoner's medical needs or to a substantial risk of serious harm violates the Eighth Amendment. *Id.* at 828; *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). This does not mean, however, that every claim by an inmate that he has not received adequate medical treatment states a violation of the Eighth Amendment. An inmate's claim for deliberate indifference must establish "(1) an objectively serious medical condition; and (2) an official's deliberate indifference to that claim." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012).

The defendants argue that Werner has not established that he suffered from a "serious medical need." A condition may be "objectively serious" if the failure to treat the condition would result in "further significant injury or the wanton infliction of pain" or where a reasonable doctor or patient would find treatment warranted. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). "It is clear that the Supreme Court contemplated that medical conditions far less critical than 'life threatening' would be encompassed by the term." *Id.* A broad range of medical conditions including "a dislocated finger, a hernia, arthritis, heartburn and vomiting, a broken wrist, and minor burns sustained from lying in vomit" may be sufficient to fulfill the objectively serious element of a deliberate indifference claim. *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012). Here, the court finds that the pain caused by Werner's ingrown toenail suggests that this is a serious medical condition.

Even if the court assumes Werner had a serious condition, Werner must demonstrate that the defendants were deliberately indifferent to his medical needs. Deliberate indifference requires more than negligence or even gross negligence; it requires that the defendants knew of, yet disregarded, an excessive risk to Werner's health or safety. *Farmer*, 511 U.S. at 835, 837; *see also Estelle*, 429 U.S. at 104. It is not enough to show that prison officials merely failed to act reasonably. *Gibbs v. Franklin*, 49 F.3d 1206, 1208 (7th Cir. 1995). "A state officer is deliberately indifferent when he does nothing . . . or when he takes action that is so ineffectual under the circumstances that deliberate indifference can be inferred." *Figgs v. Dawson*, 829 F.3d 895, 903 (7th Cir. 2016) (internal citations omitted).

Werner asserts the defendants were deliberately indifferent in treating his ingrown toenail and challenges the speed in which he received treatment. As an initial matter, he asserts that medical staff failed to respond to medical requests submitted on September 8, 15, 22, and 29, 2013. Yet, this argument is a nonstarter. Werner has not established that these medical requests concerned his ingrown toenail, and he also does not dispute the defendants' contention that medical staff did not receive a medical request regarding his toe pain until September 29, 2013. In that request, Werner states that he had been experiencing pain in his left big toe for "2 days." ECF No. 70-2 at 68. Medical staff promptly responded to his complaints of pain within five days of receiving the September 29, 2013 request. Werner asserts that he only received Tylenol to relieve his migraine headaches and that Tylenol was ineffective at relieving the pain in his toe. Yet, for the next two months, Werner received treatment for his ingrown toenail which consisted of cleaning the infected area, applying topical antibiotics to the area, and using salt-soaks. The defendants later concluded these treatment methods were not improving the condition of the toe, and Dr. Finnegan removed a

8

portion of the infected toenail on December 3, 2013. For the next three days, Nurse Jones examined Werner's surgical wound, changed the dressing, and applied Bacitracin to his toe. Medical staff also examined the toe three times in January. They provided continuous treatment, which included extra-strength Tylenol, topical antibiotics, and salt-soaks, for the three months following the procedure until Werner was transferred to another institution in March 2014. That institution provided the same type of treatment until the toenail was ultimately removed in June 2014.

Indeed, Werner received frequent and proper medical care for his ingrown toenail. The medical staff's responses to Werner's medical requests and concerns were appropriate given the nature of his complaints and the level of ongoing care he received. No reasonable jury could conclude that any delay in resolving Werner's concerns was caused by the medical staff's deliberate indifference. To be sure, "the chosen course of treatment should be given a period of time to become effective" before considering another method. *Arce v. Barnes*, No. 1:13-cv-01777, 2015 WL 5567149, at *2 (S.D. Ind. Sept. 21, 2015). Though Werner may disagree with the type of treatment he received and the rate at which he received it, mere disagreement with the medical staff's chosen course of medical treatment does not amount to deliberate indifference under the Eighth Amendment. *See Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996). Werner has not demonstrated that the medical staff's treatment decisions were "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision" on his or her medical judgment. *Burton v. Downey*, 805 F.3d 776, 785 (7th Cir. 2015) (citation omitted); *see also Wallace v. Powers*, No. 09-CV-224, 2009 WL 4015558, at *4 (S.D. Ill. Nov. 19, 2009) (noting that medical defendants were not deliberately indifferent to treating ingrown toenail because "cleaning the site of infection and the topical

9

antiseptics" are "typical" treatments). In short, Werner has failed to establish that the defendants were deliberately indifferent to his medical needs. Accordingly, the court will grant the defendants' motion for summary judgment.

## CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss (ECF No. 86) and motion for summary judgment (ECF No. 65) are **GRANTED**. The clerk is directed to enter judgment dismissing this case with prejudice.

Dated this  5th  day of January, 2018.

s/ William C. Griesbach  
William C. Griesbach, Chief Judge  
United States District Court